E. R. PENNEBAKER, Comptroller, *vs.* W. T. TOMLINSON & others.

### April Term, 1873.

ATTACHMENT OF BONDS IN HANDS OF STATE OFFICER.—State bonds deposited, under a statute, in the office of the Comptroller of the state, by an insurance company, as security for risks taken by citizens of this state, are not attachable under our general attachment law.

INSURANCE COMPANIES, BONDS DEPOSITED BY.—The law, under which such bonds are deposited, is equivalent to a statutory mortgage for the benefit of all the citizens of the state having risks equally, and no one of the persons thus secured can acquire, by legal proceedings, a prior right of satisfaction out of the fund.

SAME—DUTY OF COMPTROLLER.—The Comptroller for the time being would have the right to come into this court for the administration of the trust fund; and, in the event of the insolvency of the insurance company, to compel the claimants to come in and have their rights to the fund determined.

THE CHANCELLOR :—On the 6th of February, 1871, the complainant, in his official character as Comptroller of the

state of Tennessee, filed this bill, alleging : That according to the requirements of the act of March 13th, 1868, ch. 79, § 3, the Home Insurance Company, of New Haven, Connecticut, deposited in his office twenty bonds of the state of Tennessee, of one thousand dollars each, bearing six per cent. interest, " as security for risks taken by citizens of this state." That about the 30th of December, 1870, the said insurance company failed and became insolvent.

That on the 31st of December, 1870, Sugg Fort and others filed their bill in this court, alleging a loss of property insured in said company, and prayed and obtained an attachment of the bonds in the hands of complainant.

That on the same day W. T. Tomlinson and others filed their bill in the First Chancery Court at Memphis, against said company and complainant, alleging that complainants had taken risks in said company, and had been compelled to re-insure, and were entitled to return of premiums, and prayed and obtained an attachment of the bonds in complainant's hands.

That on the 2d of January, 1871, Hollins, Burton, and others filed their bills in this court against said company and complainant, and attached said bonds.

That on the same day, Baxter, Champion & Ricks filed their bill in the Chancery Court at Knoxville against said company for $800 fees due them, and attached said bonds in complainant's hands.

That on the 4th of January, 1871, W. T. White filed his attachment bill in this court.

That on the 5th of January, 1871, Sam'l Mulloy and others filed their bill in this court.

That on the 6th of January, 1871, H. W. Tilford filed his bill in this court.

That B. H. Keesee has filed his attachment bill at Clarksville.

That on the 20th of January, 1871, Alfred Caldwell and many others filed their bill at Knoxville.

That on the 30th of January, 1871, Alex. Kennedy, Jr.,

filed his supplemental bill at Knoxville, in which he alleges an attachment of said bonds on the 15th of October, 1868, in the hands of G. W. Blackburn, the predecessor in office of complainant.

That Thos. Boyers has instituted an attachment suit before a justice of the peace for a small amount, and attached said bonds.

That there are other claimants against said fund. That it would be impracticable and unsafe to settle the claims of all these parties in scattered and separate suits. That he is advised that it is his duty as trustee of said fund to see that it is applied to the use of the parties entitled according to law, and to this end to come into this court and compel the parties to interplead, and have their claims ascertained, and their rights adjudicated in this court, etc.

The propriety of this bill, under the circumstances, is so obvious that the defendants have all acquiesced except the defendant, Alexander Kennedy, Jr. He has filed a demurrer assigning several causes, which in effect, however, only amount to this, that he had by bill, in the Chancery Court at Knoxville, against the Home Insurance Company, and G. W. Blackburn, the then comptroller of the state, attached these bonds, and had thereby acquired a prior lien, and given the court at Knoxville jurisdiction over the funds which could not be interfered with by this court.

It is perhaps a sufficient answer to this demurrer to say, that the fact relied on does not sufficiently appear on the face of the bill to sustain the position of law, if well taken. The bill simply alleges that the defendant, Kennedy, had, on the 30th of January, 1871, filed his supplemental bill at Knoxville, in which he states that he had attached said bonds, on the 15th of October, 1868, in the hands of G. W. Blackburn, the predecessor in office of complainant. It is only an inference, not absolutely warranted in law from the allegation, that the fact is that the attachment was made as alleged.

But I do not choose to put the decision upon this tech-

8

nical ground, and shall consider, first, whether such an attachment, if made as claimed, would have any validity; and, secondly, whether, if valid, it would oust this court of the jurisdiction sought to be given to it by the complainant's bill.

The bill itself shows, and the fact is conceded by the defendant's counsel, that the bonds deposited by the Home Insurance Company, according to law, with the comptroller, have never been taken from his custody, but are now in the possession of the complainant, Pennebaker, subject to the orders of this court. What the defendant, Kennedy, means, therefore, by saying that he attached those bonds, is that he prayed and obtained an attachment, and that the sheriff made a return thereon that he had attached the said bonds by making known the contents of the writ to the then comptroller. Is this an attachment of the bonds within the meaning of our attachment laws?

If we look outside of the decisions of our own state to the settled law as to what constitutes an attachment of personalty, the answer must be in the negative. Nothing is better settled by the decisions of our sister states than that the officer, in attaching personalty, must actually reduce it into possession, so far as, under the circumstances, can be done. What is an actual possession, sufficient to constitute an attachment, must depend upon the nature, bulk, and position of the property. It should be such a custody as to enable the officer to retain, and assert his power and control over the property, and so that it cannot probably be withdrawn, or taken by another without his knowing it. And if having possession, the officer abandon it the attachment is lost. Drake on Att., § 249, *et seq.*, and numerous cases cited. There is, upon this point, no conflict whatever in the authorities.

The necessity of a seizure of property to give jurisdiction in attachment cases was laid down by the courts at an early day in this state; but the fact that attachment by garnishment was co-extensive with the direct attachment has had a

tendency to break down the lines between the two, and throws into the back-ground the necessity of positive seizure under the direct attachment. It was held in two cases in Peck's Reports : "That in order to fix the cause in court in attachment cases, something should be seized, on which the court could proceed, either by being taken by the sheriff, or so disclosed by the garnishee that an order could be made upon him, or upon such estate as, by his disclosure, the law would make liable to answer the demand. And that to take judgment prior to the seizure by the sheriff, or ascertainment of funds in the hands of the garnishee, would render the whole proceedings as much void as to take judgment before service of the original writ." *Nashville Bank* v. *Ragsdale*, Peck, 296 ; *Cheatham* v. *Trotter*, Peck, 198.

The statute law takes for granted that personal property attached remains in the custody of the officer, for it provides for the sale by him of such property, if not replevied. Code, §§ 3503, 3504, 3505. And for the collection by the officer of choses in action attached. Code, § 3502. And the courts have held that the lien of the attachment is enforced by *venditioni exponas*, and may be lost by abandonment. *Snell* v. *Allen*, 1 Swan, 208.

The only decisions which throw any doubt over these conclusions are those in which it has been held that an interest in remainder in personalty may be levied on by attachment. *Lockwood* v. *Nye*, 2 Swan, 515 ; *Bank of Tennessee* v. *Nelson*, 3 Head, 634 ; *Sneed* v. *Bradley*, 4 Sneed, 301. But these cases may be reconciled with the other decisions, either by considering that the seizure is still actual though temporary, as in the case of seizure of partnership or joint property by attachment or execution for the debt of one of the partners or joint-owners ; or that the attachment by notice is all that the nature of the subject admits of. It is to be noted, moreover, that all of the cases cited were cases where the creditor had exhausted his remedy at law by the recovery of judgment, and return of *nulla bona*, and therefore, no attachment was in fact necessary ; and, in the case

in 4 Sneed, the court give expression to a doubt of the party's right to the attachment by using this language: "Supposing a proper case to have been made for an attachment." Besides, the attachment in *Lockwood* v. *Nye*, the leading case, was authorized by 1801, 6, 2, and by what the court in *Graham* v. *Merrill*, 5 Cold. 622, 631, calls "the power of the court to grant attachments and injunctions in regard to property in the ordinary course of proceeding, when necessary or useful to obtain or secure its jurisdiction." There is nothing in these decisions to change the general rule that an actual seizure of property is essential to give validity to a direct attachment of personal property which is capable of being seized. If it cannot be seized the creditor will be compelled to resort to a different mode of redress.

A still more fatal objection to the validity of the attachment relied on by the defendant, Kennedy, is that the bonds in controversy could not, under the circumstances, be attached by a creditor of the Home Insurance Company. They were held by the comptroller in his official capacity in trust " as security for risks taken by citizens of this state." Property so held is not attachable, both on account of the tenure of the holding, and of the official character of the holder.

It is well settled that property held in trust, mortgage or pledge, or upon equitable assignment, cannot be attached, either by direct attachment, or by attachment by garnishment. Drake on Att., § 506, *et seq.; Wakefield* v. *Martin*, 3 Mass. 558; *U. S.* v. *Vaughan*, 3 Binney, 394; *Curtis* v. *Norris*, 8 Pick. 280; *Picquet* v. *Swan*, 4 Mason, 443; *Andrews* v. *Ludlow*, 5 Pick. 28.

Upon this ground, it has been held by our supreme court that money tendered in redemption of land and refused, is not attachable after bill filed to enforce redemption, whether the money remain in the hands of a third person, *Killdrew* v. *Elliott*, 8 Hum. 515, or is paid into court, *Williams* v. *Pemberton*, 5 Cold. 64. Nor is property of a debtor held by a creditor, for his own indemnity, *Fain* v.

*Jones,* 3 Head, 308 ; nor personalty conveyed in trust, and sold subject to the trust by the debtor before attachment. *Williams* v. *Whopley,* 1 Head, 401.

The reason for the rule is obvious. The creditor can have no higher rights than his debtor; *Wood* v. *Thomas,* 2 Head, 161; and *Fleming* v. *Martin,* 2 Head, 43; and as the debtor himself could not take such property neither can the creditor.

It is even better settled that a public officer, who has money or funds in his hands to satisfy a demand which a person has upon him as a public officer, cannot be adjudged a garnishee; or, as it has been put more broadly by the Supreme Court of Massachusetts, that no person deriving his authority from the law, and obliged to execute it according to the rules of law, can be charged as garnishee (and, *a fortiori,* by direct attachment), in respect of any money or property held by him in virtue of that authority. Thus sheriffs, clerks of court, trustees of insolvents, and assignees in bankruptcy, disbursing officers, etc., are exempt from attachment or garnishment. Drake on Att., § 477, *et seq.*

It was held at an early day in this state, that money levied by a sheriff by virtue of an execution cannot be attached in his hands by garnishment. *Pawley* v. *Gains,* 1 Tenn. 208. And since then that the clerk of a court is not subject to garnishment for moneys received by him. *Drane* v. *McGavock,* 7 Hum. 132.

The language of Judge Green, in delivering the opinion in this last case, is so pertinent that I cannot forbear quoting it : " If," says he, " the clerk of a court could be called on by garnishment to pay out money officially received, such a law would be most inconvenient and mischievous in practice. Take for example the clerk of the district federal court as in this case. A bankrupt has often numerous creditors, and when the dividend of his effects has been declared, the clerk might be served with garnishment from remote counties, where he must attend in person to answer, to the neglect of his official duties, and the detriment of the public

service, to say nothing of the personal inconvenience and annoyance of himself."

The Comptroller of the state of Tennessee is a public officer of high importance. No money can be paid out of the state treasury except upon his warrant. The law requires him to keep his office at Nashville, and the daily routine of duties demand his almost constant personal attention. He is clothed, in his official capacity, with a trust in the bonds required by law to be deposited in his office by all the numerous insurance companies doing business in this state. Is it to be supposed for a moment, that every creditor of these different insurance companies may demand his time and his presence in any and every quarter of the state, to answer attachment proceedings or garnishment notices seeking to reach the bonds thus deposited? The idea is simply preposterous. In the case before us, we have suits at Knoxville, Memphis, Clarksville and Nashville, and one suit before a justice of the peace. The latter is not a whit more unreasonable than the suits in court. No one of them has any validity, and the so-called attachments are void; first, because the Home Insurance Company has no attachable interest in them; and, second, because the official character of the Comptroller exempts him from such process.

But were it otherwise, it is clear that the only effect of the attachments would be to enable the creditors of the Home Insurance Company to reduce their claims to judgment, and to acquire a lien on the fund, but no priority. The law, under which the bonds are deposited, is equivalent to a statutory mortgage for the benefit of all the citizens of the state having risks. In such cases, the rule is universal in this state that the creditors share the funds pro rata, and neither can acquire any prior rights over the other. Thus, the holders of notes given for land for security of which a lien is retained, the creditors of insolvent estates and creditors of insolvent corporations, share the funds ratably, for they are in each case impressed by law with the character of a trust, and in such cases equality is equity, unless otherwise

directed by positive law. *Marr* v. *Bank of West Tennessee*, 4 Cold. 471 ; *Ewing* v. *Arthur*, 1 Hum. 537 ; *Graham* v. *McCampbell*, Meigs, 52 ; *Barcroft* v. *Snodgrass*, 1 Cold. 430, 441.

The comptroller for the time being would have the right to come into this court for the better administration of the trust fund, and to compel the creditors of the insolvent corporation, either by name, or general description, to come in and make themselves parties, and have their rights determined. Any decree or judgment undertaking to give any one of such creditors a superior lien or right would be void as against other creditors not parties to such suit, and as against the comptroller made, or attempted to be made, a party by attachment of the bonds.

The result is, that the demurrer of Kennedy must be overruled, with leave to file an answer